UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| **S.A.S.**, by and through his parents; **W.S.** and **S.S.** and on their own behalf, and **A.B.S.**, | Civil No. 04-3204 (JRT/RLE) |
| Plaintiffs, | |
| v. | |
| **HIBBING PUBLIC SCHOOLS; HIBBING BOARD OF EDUCATION; JUNE HENDRICKSON**, in her official capacity; **ROBERT BELLUZO, GLENN MUSTER,** and **THOMAS HARMS,** in their official and individual capacities; **CITY OF HIBBING;** and **JOHN MARAS, RICHARD SELLMAN, DAVID JOHNSON, THOMAS LARSON,** and **GAIL KLARICH**, in their official and individual capacities, | **MEMORANDUM OPINION AND ORDER GRANTING CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

Margaret O'Sullivan Kane, **CENTER FOR EDUCATION LAW, LTD.**, 1654 Grand Avenue, Suite 200, St. Paul, Minnesota 55105, for plaintiffs.

Susan E. Torgerson and Charles E. Long, **KENNEDY & GRAVEN**, 200 South Sixth Street, Suite 470, Minneapolis, MN 55402, for School District defendants.

Patricia Y. Beety, **LEAGUE OF MINNESOTA CITIES**, 145 University Avenue West, St. Paul, MN 55103, for Police City defendants.

S.A.S., a sixteen-year-old male student in the Hibbing Public Schools; A.B.S., an eighteen-year-old male who previously attended the Hibbing Public Schools; and W.S. and S.S., parents of both S.A.S. and A.B.S (collectively "plaintiffs"), claim that S.A.S.

was subjected to disability discrimination and harassment, and that A.B.S. was subjected to sex discrimination and harassment based on his sexuality, by both the Hibbing Public Schools and the City of Hibbing Police Department.  Plaintiffs allege violations of the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act ("Section 504"), the Americans with Disabilities Act ("ADA"), and the Minnesota Human Rights Act ("MHRA"), as well as constitutional violations and state tort claims. Plaintiffs seek declaratory and injunctive relief, and damages.

Defendants are the Hibbing Public Schools, the Hibbing Board of Education, the current and former Superintendent of the Hibbing Public Schools, and various other administrators and employees of the School District (collectively "District defendants"), and the City of Hibbing, the Chief of Police, and various other employees of the Police Department including the School Liaison officers from both the middle school and the high school (collectively "City defendants").

The Court granted the District defendants' motion to dismiss all claims based on the plaintiffs' failure to exhaust their administrative remedies.[1]  The City defendants now move for summary judgment on all claims.  For the reasons discussed below, the Court grants the City defendants' motion.

---

[1] Because the Court based its Order on plaintiffs' failure to exhaust administrative remedies under the IDEA, the Order did not address A.B.S.'s independent claims against the District defendants.  The District defendants have filed a motion for summary judgment of A.B.S.'s claims against the District defendants, which the Court will take up separately.

# BACKGROUND

S.A.S. attended Jefferson Elementary School in Hibbing for fifth grade, Lincoln Middle School in Hibbing for sixth, seventh, and eighth grade, and Hibbing High School for ninth grade. S.A.S was required to repeat ninth grade after receiving all failing grades during the 2002-03 school year. He has since completed his ninth grade school year, but rather than attending Hibbing High School, S.A.S. has been placed into a homebound instruction program by the District. A.B.S. attended Hibbing High School from 2000-2002. He attended Hibbing Community College through a Post Secondary Education Option program for the 2002-2003 school year and graduated from the Alternative Learning Program night school at the high school in 2004.

In 1992, S.A.S. was diagnosed with Attention Deficit Hyperactivity Disorder and began taking medication. W.S. and S.S. informed the District of S.A.S.'s condition. Plaintiffs allege that the District defendants, even after being notified of S.A.S.'s disability, repeatedly refused to develop an individual education plan for S.A.S., failed to implement such a plan correctly, denied him his medication, denied him access to lunches and extracurricular activities with his peers, and regularly removed him from the classroom setting. W.S. and S.S. filed several complaints against the District with the Minnesota Department of Education. Plaintiffs allege that, in response to W.S. and S.S.'s complaints, S.A.S. was exposed to excessive discipline, suspensions, illegal searches and seizures, custodial interrogations, and ultimately, criminal charges at the hands of the City defendants. Plaintiffs complain that the City defendants acquiesced and participated in the District defendants' practice of denying special education and related services addressing S.A.S.'s disability by instituting criminal charges against S.A.S. for behavior

related to his disability rather than employing measures called for or in line with his individual education plan. Plaintiffs also allege that the City defendants retaliated against A.B.S. for his association with S.A.S. by threatening A.B.S. with arrest and in fact bringing unfounded criminal charges against him.

## ANALYSIS

### I.      Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id*.

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d

1076, 1077 (8th Cir. 1980).  However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial.  *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

**II.   Federal Claims**

   **A.   Section 1983**

Plaintiffs bring suit under 42 U.S.C. § 1983 alleging violations of the Fourth Amendment, the Fourteenth Amendment substantive due process and equal protection clauses, the Individuals with Disabilities Education Act, Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and pattern and practice and failure to train.  Additionally, plaintiffs assert a conspiracy claim under 42 U.S.C. § 1985, and various state law claims.  The Court addresses each in turn.

      **1.   Qualified Immunity**

Defendants assert they are entitled to qualified immunity on all of plaintiffs' federal claims.  In determining whether a state official is entitled to qualified immunity, the Court's first inquiry is whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate violation of a federal constitutional or statutory right.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  If they do not, then summary judgment in favor of the defendant is appropriate.  If the plaintiff's allegations show such a violation, then the Court must inquire whether the right was clearly established, "in light of the specific context of the case."  *Id.* at 201.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer

[or official] that his conduct was unlawful in the situation he confronted." *Id.* "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [official] conduct." *Id.* at 205. In other words, "if the law did not put [the defendant] on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* at 202. As discussed below, the Court finds that the City defendants' conduct either was not unlawful, in that it did not violate a constitutional or statutory right, or, in the alternative, a reasonable officer would not have known his conduct to be unlawful. Summary judgment on plaintiffs' § 1983 claims is, therefore, appropriate.

### 2. Fourth Amendment

In their complaint, plaintiffs assert that, upon learning that S.A.S. was disabled and in response to referrals from school officials, the City defendants repeatedly, without probable cause, instituted criminal charges against S.A.S. for behavior related to his disability. Plaintiffs complain that the officers brought criminal charges rather than implementing the agreed upon behavior intervention plan developed in connection with S.A.S.'s individualized education plan.

Initially, the Court notes that S.A.S.'s disability does not exempt him from abiding by the law. Under the IDEA and his individualized education plan, S.A.S. is entitled to have *school officials* address behavior related to his disability according to his particular behavior intervention plan. However, both the IDEA and S.A.S.'s behavior intervention plan contemplate the referral of criminal behavior to the police and make no mention of altering the standards by which such behavior is investigated or addressed *by the police*.

*See* 20 U.S.C. § 2015 (stating that "[n]othing in this subchapter shall be construed to prohibit an agency from reporting a crime committed by a child with disability to the appropriate authorities"). As such, the fact that school officials may not have followed the agreed upon procedures before referring incidents to a police officer, does not bear on whether the officer acted appropriately. Similarly, while it is possible that S.A.S.'s disability might be considered in attempting to fashion an appropriate sentence or remedy for any criminal behavior committed by S.A.S., that any of the officers may have known S.A.S. was disabled is not relevant to whether they appropriately determined that probable cause existed to bring criminal charges against S.A.S. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

Although plaintiffs allege repeated arrests by all defendants, plaintiffs only identify with any specificity two charges brought by Richard Sellman against S.A.S. and three charges brought by Thomas Larson against A.B.S.[2] Plaintiffs specify two incidents

---

[2] It appears from a document entitled "Plaintiffs' Answers to Bpd's Interrogatories and Request for Production of Documents" that Larson was also involved in investigating and charging S.A.S. with Arson on April 29, 2001. Plaintiffs present no evidence of wrongdoing in connection with this incident aside from bald assertions that Larson coached witnesses and failed to conduct a complete and comprehensive investigation, including by ignoring exculpatory information. Specifically, plaintiffs provide no information as to the details of the alleged arson, the investigation that was conducted, and what exculpatory information was available but ignored. The matter was not even touched upon in Larson's deposition, and was only briefly mentioned during David Johnson's deposition. Additionally, plaintiffs report that S.A.S. was charged with disorderly conduct on September 15, 2002, but that the basis for this charge is not known. During 2003 and 2004, S.A.S. was charged with 32 additional offenses including use of tobacco, obstructing justice, assault in the fifth degree, juvenile alcohol, juvenile curfew, burglary in the first, second, and third degrees, vehicle theft, theft, disorderly conduct, trespass, terroristic threats, no driver's license, and ATV violations. No further information is provided concerning any of these charges.

(Footnote continued on next page.)

that resulted in misdemeanor charges against S.A.S. On May 23, 2001, S.A.S. was charged with disorderly conduct for tapping his feet and fingers and being otherwise disruptive in a classroom setting. On February 5, 2002, S.A.S. was charged with disorderly conduct for hitting another student with a rubber band, leaving a welt. Plaintiffs identify three instances where A.B.S. was allegedly wrongfully charged. According to the plaintiffs, on March 20, 2002, A.B.S. was charged with assault after throwing a bottle that struck another student. Plaintiffs allege that the bottle bounced off the trash can and accidentally struck the other student and that the victim was willing to corroborate this, but that the school and police liaison officer refused to listen to the victim and conducted a one sided investigation culminating in a charge. After encouraging the victim to tell her story to the court, A.B.S. was charged with tampering with a witness. Additionally, on January 15, 2002, A.B.S. was involved in a fight that grew out of the alleged sexual harassment A.B.S. was subjected to at school and was charged with 5th degree assault. On January 16, 2002, A.B.S. was charged with disorderly conduct for allegedly flipping another student's hat off of his head.

_____
(Footnote continued.)

Plaintiffs assert that A.B.S. was also charged with underage tobacco use on October 1, 2003; interfering with an emergency call, domestic assault, and obstructing legal process on March 27, 2003; minor consumption on September 6, 2003; and assault in the fifth degree in January 2004. In his deposition, A.B.S. acknowledged that the March 27, 2003 charges arose out of an altercation he had with his father, which prompted his mother to call the police. No further information about that or any of the other charges is provided to the Court.

The mere fact of these charges, and the little information provided, does not support plaintiffs' conclusory allegations that they were improperly instituted.

Having reviewed all of the evidence submitted in connection with these incidents, the Court finds that the officers appropriately collected information about the incidents from various witnesses and participants. Furthermore, the Court finds that probable cause existed for each of the charges and, in the alternative, that a reasonable officer would have believed that probable cause existed for each of the charges. *See Benigni v. Smith*, 121 Fed. Appx. 164, 165-66 (8th Cir. Jan. 6, 2005).

In their complaint, plaintiffs also assert that "S.A.S. was repeatedly interrogated by defendants . . . Sellman, Johnson and Klarich without the benefit of counsel, parents or his rights being read to him." It appears from plaintiffs' answers to interrogatories that S.A.S. was questioned by police officers on several occasions during school hours in relation to the arson charge mentioned previously in note 2. In light of the paucity of information provided to the Court with respect to either the arson charge or these alleged interrogations, the Court cannot find anything unlawful or unconstitutional in removing a student from a class in order to further an investigation into a crime as serious as arson.

In light of the foregoing, the Court will grant defendants' motion for summary judgment with respect to plaintiffs' Fourth Amendment claims.

### 3. IDEA, Rehabilitation Act, and ADA Claims

Plaintiffs allege that by assisting the District defendants in meting out excessive discipline and periodically arresting S.A.S., the City defendants interfered with S.A.S.'s

educational rights in violation of the IDEA,[3] section 504 of the Rehabilitation Act, and the ADA. (*See, e.g.,* Complaint at 89 ("The City [and] HPD . . . have intentionally engaged in a pattern and practice of knowing deprivations of plaintiffs' rights under the Individuals with Disabilities Education Act, Section 504 of the Rehabilitation Act, and the Americans with Disabilities Act."); Pls.' Mem. Opp. S.J. at 21 ("Defendants are liable for violating his rights under both the ADA and Rehabilitation Act by denying him the benefits of participating in his public education program.").) The IDEA's mandate is explicit: plaintiffs must exhaust IDEA's impartial due process hearing procedures in order to bring a civil action. *See S.A.S. ex rel. W.S. v. Hibbing Public Schools*, 2005 WL 1593011, at *2-3 (D. Minn. July 1, 2005) (*citing Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 53 (1st Cir. 2000)); *see also Prins v. Indep. Sch. Dist. No. 761*, 23 IDELR 544 (D. Minn. 1995) ("[T]he IDEA specifically contains a detailed procedural component inherently encompassing an exhaustion requirement."). This requirement also applies to claims filed under the Constitution, the ADA, Section 504, and other Federal statutes "protecting the rights of children" with disabilities. 20 U.S.C. § 1415(l); *see also Vultaggio v. Bd. of Educ.*, 216 F. Supp. 2d 96, 103 (E.D.N.Y. 2002) ("Even if a plaintiff alleges claims solely pursuant to provisions other than the IDEA, administrative remedies must be first pursued if the claim is one that seeks relief for an alleged failure to provide appropriate educational services."), *Prins*, 23 IDELR 544 ("[A] case encompassing analogous IDEA claims such as issues of FAPE . . . require exhaustion."). The Court has

---

[3] The Court notes that neither party has raised the issue of whether a non-school or school district employee like a police officer is amenable to suit under the IDEA, which is explicitly directed at state and local educational agencies receiving funding through the Secretary of Education.

not received any indication that plaintiffs have exhausted their administrative remedies against the City defendants. Accordingly, plaintiffs' claims that S.A.S. was deprived of educational opportunities under the IDEA, § 504, and the ADA must be dismissed.[4]

### 4. Fourteenth Amendment

#### a. Due Process

"The Fourteenth Amendment guarantees '[s]ubstantive due process [, which] prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Moran v. Clarke*, 296 F.3d 638, 643 (8th Cir. 2002) (alterations in original) (*quoting Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc)). Plaintiffs contend that the City defendants subjected S.A.S. to "threats of arrest, arrest and charges ha[ving] the impact of placing [S.A.S.] at the mercy of the juvenile justice system, removing him from his education program and family and requiring his family to repeatedly defend against such claims in juvenile court" and that such "malicious exercises of official power are clearly

---

[4] Additionally, the Court notes that plaintiffs' IDEA, and related § 504, and ADA claims are premised on the notion that the City defendants improperly and discriminatorily subjected S.A.S. to criminal investigations and charges. Although plaintiffs baldly assert that non-disabled students received different treatment than did S.A.S., they provide no concrete evidence of such behavior and do not dispute the testimony of Sellman that he regularly arrested other students for similar behavior and, on the rubber band occasion, charged *both* S.A.S. and the other student with disorderly conduct. In light of this lack of evidence of discriminatory behavior and evidence of non-discriminatory behavior, the Court would likely find that the City defendants' actions, as a matter of law, were not discriminatory. Similarly, based on the Court's determination, *supra*, that probable cause existed for some of the charges brought against S.A.S. and that insufficient evidence was presented to determine the propriety or impropriety of the officers' actions with respect to the remaining charges, the Court would be hard pressed to find that the City defendants' actions improperly interfered with S.A.S.'s statutorily protected educational rights.

conscience shocking." (Pls.' Memo. Opp. S.J. at 10.) Having already determined that the City defendants' actions were proper or that there is insufficient evidence to determine whether the actions were proper or improper, the Court cannot find that the actions were so egregious or outrageous as to shock the conscience and violate the Fourteenth Amendment.

### b.     Equal Protection

Plaintiffs assert that both S.A.S. and A.B.S. were treated differently than were non-disabled and non-activist students, and that they were singled out for this treatment solely because of S.A.S.'s disability and plaintiffs' activism. As discussed in note 4, *supra*, the only evidence, as opposed to unsupported allegation, before the Court indicates that S.A.S. was not treated any differently than were non-disabled misbehaving or law-breaking students. After a careful review of all of the evidence before it, the Court also finds no evidence that A.B.S. was treated differently than non-activist students. Furthermore, the Court finds no indication that the City defendants' attentions to S.A.S. and A.B.S. were in any way caused by or related to either S.A.S.'s disability or the plaintiffs' activism. The mere fact that S.A.S. and A.B.S. were the subject of numerous criminal investigations and/or charges shortly after S.A.S.'s disability and plaintiffs' activism may have become known to the defendants is simply not enough to give rise to an inference of discriminatory motive. Additionally, these actions, none of which have been shown to be improper, are easily said to be rationally related to the legitimate governmental purpose of ensuring safe schools and communities and enforcing the law. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 442-43 (1985) (applying

rational basis test to claims of disability discrimination under the equal protection clause). Accordingly, the Court finds no equal protection violation.

### 5. Pattern and Practice/Failure to Train

The City cannot be liable in connection with the officers' actions, whether on a failure to train theory or a municipal custom or policy theory, absent an underlying substantive claim. *Abbott v. City of Crocker, Mo.*, 30 F.3d 994, 998 (8th Cir. 1994).

### B. § 1985 conspiracy

Plaintiffs allege that the district defendants conspired with the Hibbing police to deprive S.A.S. and A.B.S. "of their civil rights by threatening each student with arrest and by requesting that each student, without probable cause be criminally charged." (Pls.' Mem. at 25.) The Court finds that plaintiffs' conspiracy claim fails because the plaintiffs fail to present any specific indication of an agreement between the District and City defendants and, particularly in light of the Court's determination that plaintiffs' substantive rights were not violated by any of the City defendants' actions, fail to offer any evidence that their rights were denied or that they suffered any injuries. *See Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996).

## III. STATE CLAIMS

Plaintiffs also assert claims under the MHRA and have raised four tort claims. The Court declines to exercise supplemental jurisdiction over plaintiffs' state law claims in the absence of an independent federal jurisdictional basis. 28 U.S.C. § 1367(c).

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [Docket No. 41] is **GRANTED**. Defendants City of Hibbing, Maras, Sellman, Johnson, Larson, and Klarich are **DISMISSED**.

In light of the Court's determination on this motion, **IT IS FURTHER ORDERED** that defendants' motion to strike [Docket No. 58] is **DENIED.**


DATED:   September 13, 2005                                    s/ John R. Tunheim            _
at Minneapolis, Minnesota.                                        JOHN R. TUNHEIM
                                                                         United States District Judge